UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

**BENJAMIN RUSSELL,**
  Plaintiff,

v.

**LEIDOS INC.,** *et al.***,**
  Defendants.

Case No. 1:23-cv-1488-CLM

## MEMORANDUM OPINION

  Benjamin Russell was injured by a flying smoke grenade. Russell sued four companies and one individual in the Circuit Court of Calhoun County, Alabama. One of the companies, Defense Technology, LLC, removed the case to this court. Russell asks the court to remand the case to state court, (doc. 9), while the individual Defendant, Anthony Landingham, asks the court to dismiss the claim against him under Rule 12(b), (doc. 7). For the reasons stated below, the court **GRANTS** Russell's Motion to Remand, (doc. 9), and thus **DENIES AS MOOT** Landingham's Motion to Dismiss, (doc. 7).

### BACKGROUND

**A. Factual Background**

  Russell was a police officer attending a Riot Control Training at Fort McClellan. Someone at the training deployed an SAF Smoke Grenade that launched like a projectile, bounced off a helmet, and hit Russell. Russell suffered "significant bilateral hearing loss, among other injuries." (Doc. 1-1, ¶ 8).

  Leidos, Inc. was the contractor responsible for the training. Landingham worked as a "safety engineer" for Leidos. (*Id.* ¶ 10). As Leidos's safety engineer, Landingham wrote an "Incident Report" the same day. In the section titled "Specific Corrective Action That Will Be Taken," Landingham wrote:

> Effective Immediately Leidos has discontinued the use of all SAF Smoke Grenades.
>
> Leidos will now be incorporating the use of EG Burst Wire Pull Smoke [a different smoke grenade model].
>
> All associated Risk Assessments (RAs) and Job Hazard Analysis (JHAs) will be updated to include this change.

(Doc. 9-1).

### B. Procedural Background

#### i. *Russell's Complaint*

Russell sued the defendants in state court. Russell's complaint pleads four counts. The first three counts target the SAF Smoke Grenade's manufacturers, ALS Technologies and Defense Technology, LLC. Count I alleges wantonness and negligence. Count II alleges breach of warranty. And Count III alleges breach of the Alabama Extended Manufacturer's Liability Doctrine.

Count IV alleges wantonness and negligence against Landingham, Leidos, and IB3 Global Solutions (a subcontractor of Leidos). Russell alleges that Leidos, IB3, and Landingham failed to provide a safe training environment through failing to implement safety measures, monitor the exercise to ensure safety, and select smoke grenades that were safe to use.

#### ii. *Defendants' Notice of Removal*

Next, Defense Technology filed a timely notice of removal to this court, claiming diversity jurisdiction. The parties agree that the amount in controversy exceeds $75,000. They do not agree on removal jurisdiction.

Of all the parties, only Landingham is an Alabama resident.[1] Landingham's Alabama residency generally prevents removal under the forum defendant rule. *See* 28 U.S.C. § 1441(b)(2). But Defense Technology says that Russell fraudulently joined Landingham because "there is no reasonable probability of recovery against [him]." (Doc. 1 at 4-5). In support, Defense Technology attached an Affidavit signed by Landingham that, among other things, says he was not present when the grenade hit Russell; he did not choose the grenade used; and he didn't plan the exercise or choose who supervised it. (Doc. 1-2). Defense Technology reasons that because Landingham did not participate in the training exercise, he cannot be found liable under Alabama law. (Doc. 1 at 6-7). If Defense Technology is correct, the court would not consider Landingham when looking at the forum defendant statute, and this case would be removable.

### iii.   *Landingham's Motion to Dismiss*

Next, Landingham moved to dismiss Russell's Complaint for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Doc. 7, ¶ 14). He attached the same affidavit in support of dismissal. (Doc. 7-2).

### iv.   *Russell's Motion to Remand*

Finally, Russell moved to remand. (Doc. 9). In support, Russell attached Landingham's Incident Report. (Doc. 9-1). Russell says that he had a good faith basis for believing that Landingham might be liable to him under Alabama law because "[Landingham] held the position of 'safety engineer' and based upon his post[-]incident investigation, it appeared that Landingham likely had the responsibility, in some respect, for the safety of the subject training program." (Doc. 9 at 8).

---

[1] Russell is a citizen of Colorado. (Doc. 1 at 9). Leidos is a citizen of Virginia because it was incorporated in Virginia and has its principal place of business there. (*Id.*). IB3 is a limited liability company organized under Tennessee law, and its two members are both residents of Tennessee, so IB3 is a citizen of Tennessee. (*Id.*). ALS Technologies is a limited liability company organized under Virginia law with its principal place of business in Virginia. The sole member of ALS Technologies is a Delaware corporation with its principal place of business in Virginia, so itis a citizen of Virginia. (*Id.*). Defense Technology is a limited liability company that is a citizen of Delaware, Florida, and Wyoming. (*Id.*).

3

## STANDARDS OF REVIEW

Because the court will grant Russell's Motion to Remand, thus mooting Landingham's motion to dismiss, it provides only the standards of review related to removal.

### A.   Removal generally

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Removal is proper when the federal court has subject matter jurisdiction over the case. "Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

District courts must "construe removal statutes strictly" and resolve "all doubts about jurisdiction" in favor of remand. *Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). To determine whether the case should be remanded, the court "must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th. Cir. 1997). The court "makes these determinations based on the plaintiff's pleadings at the time of removal" but "may consider affidavits and deposition transcripts submitted by the parties." *Id.* at 1538.

### B.   Removal based on Fraudulent Joinder

When resolving a claim of fraudulent joinder in this Circuit, the procedure is "similar to that used for ruling on a motion for summary judgment under [Rule] 56(b)." *Id.* at 1538. District courts must remand if they find a "reasonable basis for predicting that the state law might impose liability on the facts involved" after "drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff." *Id.* at 1541-42; *see Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) ("[T]here must be some question of fact before the district court can resolve that fact in the plaintiff's favor"). The court is "not to weigh the merits of a plaintiff's claim beyond determining whether . . . 'there is even a possibility

4

that a state court would find that the complaint states a cause of action against any one of the resident defendants.'" *Crowe*, 113 F.3d at 1538.

To avoid remand, "the removing party has the burden of proving [by clear and convincing evidence] that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011). Defendants can rely on affidavits to meet this burden. If the affidavits are "undisputed by the [p]laintiffs, the court cannot then resolve the facts in the [p]laintiffs' favor based solely on the unsupported allegations in the [p]laintiffs' complaint." *Legg*, 428 F.3d at 1323.

## DISCUSSION

Whether the forum defendant statute barred removal boils down to whether there is "even a possibility" that an Alabama state court could find that Russell pleaded a plausible claim of negligence or wantonness against Landingham. *Crowe*, 113 F.3d at 1538. If the answer is 'yes', then the forum defendant statute barred removal, and remand is required. If the answer is 'no', the court must pretend that Landingham is not a party, and the forum defendant rule doesn't apply.

As explained below, the court finds there is at least a possibility that a state court would find that Russell pleaded a viable state-law negligence claim against Landingham. So the court must remand the case.

### A. Alabama law

Again, the court must decide whether Russell pleads a potentially viable state-law negligence or wantonness claim against Landingham. Under Alabama law, "corporate employees are liable personally for the wrongful action of the company or its other employees only if they personally participate in the tort." *Legg*, 428 F.3d at 1324 (quoting *Turner v. Hayes*, 719 So. 2d 1184, 1188 (Ala. Civ. App. 1997)); *see Ex parte McInnis*, 820 So. 2d 795 798-99 (Ala. 2001). So the court must decide whether Russell pleads facts that, if proved true, would show that Landingham personally participated in the grenade event that injured him.

5

### B. Parties' Submissions

Both sides present documentary evidence to support their position. The court starts with Russell's.

### 1. Russell's Submissions

1. <u>The Complaint</u>: Russell alleged in his complaint that Landingham was Leidos's "safety engineer with various responsibilities related to said [riot control] training," including the training session that involved an SAF Smoke Grenade hitting Russell. (Doc. 1-1, ¶ 10). Russell alleges that, as safety engineer, Landingham had several duties and responsibilities:

   a) Providing and ensuring a safe and reasonable training environment for the participants such as Plaintiff;

   b) Providing reasonable, suitable, and compliant gear and equipment to protect the participants such as Plaintiff;

   c) Setting up and/or ensuring that a reasonable, suitable, and compliant system was in place to protect the participants such as Plaintiff;

   d) Inspecting, monitoring, supervising, and/or overseeing the training activities to ensure that said activities were being performed safely, reasonably, and in compliance with the industry standards and the applicable regulations and rules;

   e) Providing adequate, reasonable, and compliant training, education, and protections to the participants of the training program so that the participants, including Plaintiff, would not be injured;

   f) Coordinating efforts amongst the participants and parties involved in the training program and ensuring that a proper, suitable, and compliant system was in place;

   g) Setting up systems to warn, notify, and apprise the participants of the dangers and hazards that might exist during the training program and how to prevent injurious events from occurring;

   h) Pre-qualifying any prospective entities or individuals to determine if they were suitable, qualified, and/or otherwise competent to serve and perform the job for which they were performing;

   i) Requiring that an adequate and compliant training program was in place in order to protect the participants, including Plaintiff;

   j) Training, educating, and supervising their respective employees, contractors, and/or sub-contractors for purposes of ensuring that they were qualified to carry out the job duties for which they were hired to perform;

    k)     Developing safety programs for contractors, sub-contractors and employees to follow to protect participants such as Plaintiff from injury;

    l)     Identifying and selecting smoke grenades that were reasonably safe to use for the subject training; and

    m)     Storing, taking care of, handling and using the smoke grenades in a way that would maintain the quality and integrity of the smoke grenade so that same would not malfunction and injure someone like the Plaintiff.

(Doc. 1-1, ¶ 26). Among other things, Russell alleges that Landingham negligently or wantonly violated these duties by allowing someone to deploy the SAF Smoke Grenade and failing to implement safety measures that would have protected Russell from grenade-related injuries while training. (*Id.*)

    2. <u>Incident Report</u>: Russell attached Landingham's post-accident Incident Report to his motion to remand. (Doc. 9-1). In it, Landingham refers to himself as Leidos's "Safety Engineer," and he reports that he investigated the incident the same day it happened. Landingham described the incident:

| Fully Describe Accident/ Incident | Near Miss occurred at approximately 12:00 PM, when the student was knelt down while preparing to donn his APR during line formation exercise. At approximately 30 feet from the line formation an Instructor deployed a smoke grenade on the tarmac; when the grenade inadvertently launched like a rocket towards the line formation. The smoke grenade struck a helmet lying on the tarmac beside the student; causing the grenade to get airborne and glancing the student's left shoulder. The student received no injuries and was advised to be evaluated by the on-site medics. After the medical evaluation the student returned back to training.<br><br>This is a final report. |
|---|---|

(*Id.*) And Landingham detailed the corrective action:

| Specific Corrective Action That Will Be Taken | Effective immediately Leidos has discounted the use of all SAF Smoke® Grenades.<br>Leidos will now be incorporating the use of EG Burst Wire Pull Smoke®.<br>All associated Risk Assessments (RAs) and Job Hazard Analysis (JHAs) will be updated to include this change. |
|---|---|

(*Id.*)

    Russell points to the Incident Report—particularly the corrective action summary—as evidence that, as safety engineer, Landingham plays a part in (a) creating the Risk Assessments and Job Hazard Analyses for Leidos's riot control training sessions and (b) choosing which grenade will be used during the training sessions.

### 2. Defendants' Submission

In rebuttal, Defendants point to Landingham's affidavit. *See* (Doc. 23, citing Doc. 7-2). In it, Landingham refutes many allegations in Russell's complaint. For example, Landingham says:

- He did not design the training session;
- he did not plan the training session;
- he was not present at the training session;
- he did not choose the type of grenade used; and,
- he did not qualify, hire, train, or supervise the trainer that deployed the grenade that hit Russell;

(Doc. 7-2, ¶¶ 4-9). Landingham says his role was limited to "preparing and filing the mandatory report of personal injury to the federal government regarding this incident." (*Id.*, ¶ 10).

### 3. Discussion

If Landingham can prove everything he says is true, particularly the limited connection he had to the incident, he likely would not be found liable under Alabama law. But that's a big 'if'.

Landingham is an interested party; he wants to avoid litigation and liability. As Russell notes, Landingham's short affidavit presents facts that are narrowly tailored to achieve dismissal. For example, Landingham says that his job duties "did not include" designing the training session, training the supervisors, or warning participants about the dangers posed by grenades. (Doc. 7-2, ¶ 9). But Landingham doesn't list the affirmative duties of Leidos's "safety engineer"—besides investigating and documenting mishaps. One must assume that a "safety engineer" engineers *something* related to safety. Russell speculates that the safety engineer helps create the Risk Assessments and Job Hazard Analyses for riot control training sessions, based on Landingham reporting that both safety-related assessments now reflect the decision to replace the SAF Smoke Grenade with the EG Burst Wire Pull Smoke:

| Specific Corrective Action That Will Be Taken | Effective immediately Leidos has discounted the use of all SAF Smoke® Grenades. Leidos will now be incorporating the use of EG Burst Wire Pull Smoke®. All associated Risk Assessments (RAs) and Job Hazard Analysis (JHAs) will be updated to include this change. |
|---|---|

Landingham does not address whether he helps craft or alter Leidos's Risk Assessments and Job Hazards Analyses in his affidavit. Because Russell is the non-movant, the court must therefore assume that Landingham, in his role as "safety engineer," plays a part in determining the risks and hazards present at riot control training sessions, including the types of grenades that may be used and those that are banned.

The court could recount other examples, but all lead to the same point: it seems odd that a safety engineer's responsibility is limited to *reporting* safety incidents. If the safety engineer does not engineer the safety aspects of Leidos's training sessions, who does? Landingham does not say in his affidavit; he merely disavows personal responsibility. Perhaps Landingham is correct; perhaps it was someone else. Perhaps Landingham has other safety-related responsibilities yet to be disclosed. This court cannot say for sure because there are questions of fact that require discovery to answer.

———

Compared to Landingham's Incident Report, Landingham's affidavit does not provide clear and convincing evidence that there is not "even a possibility" that Landingham could be liable to Russell under Alabama negligence law. *Crowe*, 113 F.3d at 1538. The court thus finds that Russell did not fraudulently join Landingham under the 'no-possibility-of-recovery' test used by the Eleventh Circuit, thereby precluding removal under the forum defendant rule, 28 U.S.C. § 1441(b)(2).[2] Because removal was improper, this court lacks removal jurisdiction and must remand without ruling on Landingham's pending motion to dismiss. (Doc. 7).

---

[2] Russell would also be entitled to remand under the Supreme Court's 'reasonable basis' test, which finds fraudulent joinder only if the plaintiff added the resident defendant "without any reasonable basis in fact and without any purpose to prosecute the cause in good faith against the coemployee." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 98-99 (1921) (emphasis added). Russell named Landingham a defendant because Russell had a copy of Landingham's Incident Report in which Landingham called himself a "safety engineer" and discussed the switch from one type of grenade to another. (Doc. 30 at 2). That report gave Russell a good faith, reasonable basis in fact to add Landingham to his complaint. *Wilson*, 257 U.S. at 98-99. Stopping the fraudulent joinder inquiry here (as the Supreme Court has) better reflects principals of federalism because it avoids federal courts opining on the viability of state-law claims, based on self-serving paper testimony untested by cross-examination or interrogatories. But how to structure the test is a question for courts higher than this one.

## CONCLUSION

For these reasons, the court lacks removal jurisdiction over this case. The court thus **GRANTS** Russell's Motion to Remand, (doc. 9), **DENIES AS MOOT** Landingham's Motion to Dismiss, (doc. 5), and **DENIES AS MOOT** Russell's Motion for a Status Conference, (doc. 34).

The court will issue a separate order directing the Clerk of Court to remand this case. The parties are liable for their own costs.

**Done** and **Ordered** on July 30, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE